UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Warren Hinds,<br><br>                        Petitioner,<br>v.<br><br>Scott Kernan, Warden,<br><br>                        Respondent. | Case No.: 17-cv-00379-AJB-JLB<br><br>**REPORT AND RECOMMENDATION** |

## I.    INTRODUCTION

Before the Court is the first amended petition for writ of habeas corpus (hereinafter, the "Petition") pursuant to 28 U.S.C. § 2254 of Petitioner John Hinds. (ECF No. 31.)[1] Also before the Court is Respondent's motion to dismiss the first amended petition for writ of habeas corpus and Petitioner's opposition thereto. (ECF Nos. 32, 34.)

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule HC.2 of the United States District Court for the Southern District of California. For the reasons discussed below, the Court recommends that Respondent's motion (ECF No. 32) be **GRANTED** and the Petition (ECF No. 31) be **DENIED.**

---

[1] The operative petition is docketed as the "First Amended Petition for Writ of Habeas Corpus." (ECF No. 31.) The initial petition filed in this case was dismissed without prejudice. (ECF No. 20.)

1

## II. BACKGROUND

On December 28, 2017, the district court adopted this Court's Report and Recommendation denying Respondent's motion to dismiss the petition for writ of habeas corpus without prejudice. (ECF No. 19.) In doing so, the district court adopted the finding that, unless Petitioner is entitled to equitable tolling, the petition is time barred. (*See* ECF Nos. 17, 19.) In addition, the Court found that more factual development was necessary before this Court could determine whether any mental impairment of Petitioner warrants equitable tolling of the limitations period, specifically for the time period of March 2016 through Petitioner's filing of the original federal petition in August 2016. (ECF No. 17 at 13.)[2]

On January 22, 2018, Petitioner filed medical records as well as a motion seeking leave to amend his petition. (ECF Nos. 25, 27.) Petitioner's motion to amend his petition for writ of habeas corpus was granted on March 29, 2018. (ECF No. 30.) Petitioner subsequently filed this Petition in which he contends that he was mentally incompetent from August 29, 2016, through February 20, 2017, and therefore, entitled to equitable tolling throughout this time period. (*See* ECF Nos. 31, 31-1 at 13.) On April 20, 2018, Respondent filed a motion to dismiss the Petition with prejudice as being barred by the statute of limitations. (ECF No. 32.) On May 15, 2018, Petitioner filed an opposition to the motion to dismiss arguing he is entitled to equitable tolling or, alternatively, the miscarriage of justice exception. (ECF No. 34.)[3] Therefore, the issue before the Court is whether equitable tolling or the miscarriage of justice exception applies to save the Petition from being time barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

---

[2] Citations to documents filed on the public docket of this action refer to the pagination assigned by the CM/ECF system.

[3] Neither party raises new arguments with respect to statutory tolling, which was analyzed and ruled on in the context of the original petition. (ECF Nos. 17, 19, 31, 31-1, 32.) This Court's prior analysis of statutory tolling stands and is incorporated herein by reference. (ECF No. 17.)

## III. LEGAL STANDARD

AEDPA's statute of limitations recognizes three exceptions that may permit review of a petition after the one-year limitation period has expired: (1) statutory tolling under 28 U.S.C. § 2244(d)(2); (2) equitable tolling, *see Holland v. Florida*, 560 U.S. 631, 645 (2010); and (3) in rare and extraordinary circumstances, the fundamental miscarriage of justice exception, which is also referred to in case law as the *Schulp* gateway or the actual innocence gateway, *see McQuiggin v. Perkins*, 569 U.S. 383, 386, 392-94 (2013).

This Court has already held with respect to statutory tolling that the statute of limitations was tolled when Petitioner filed his first petition for writ of habeas corpus in the Superior Court on May 15, 2015. (ECF Nos. 17, 19.) By the time of the filing of that Superior Court petition, 234 days of the statute of limitations had lapsed, and 131 days remained. (*Id.*) The limitations period remained tolled until April 20, 2016, when Petitioner completed his full round of collateral review by the state courts, and the California Supreme Court denied the Petition. (*Id.*) Thus, as addressed in the prior Report and Recommendation, absent a basis for relief, the statute of limitations to file a federal petition ran on August 29, 2016. Petitioner did not file his first federal petition until 175 days later. Only the equitable tolling and the fundamental miscarriage of justice exceptions are at issue here.

With respect to equitable tolling, AEDPA's statute of limitations period may be tolled for equitable reasons in appropriate cases. *Holland*, 560 U.S. at 645. "Petitioner is entitled to equitable tolling only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Mental impairment can permit equitable tolling when two factors are met. First, the impairment was either so severe Petitioner was unable to understand the need to timely file or his mental state rendered him unable to prepare a habeas petition and effectuate its filing. *See Bills v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010). Second, the impairment must have made it impossible to meet the filing deadline under the totality of circumstances, despite

Petitioner's diligence. *See Bills v. Clark,* 628 F.3d 1092, 1100 (9th Cir. 2010). It is the petitioner's burden to show that "extraordinary circumstances . . . such as a mental state render[ed] an inability personally to prepare a habeas petition and effectuate its filing." *Orthel v. Yates*, 795 F.3d 935, 938 (9th Cir. 2015).

With respect to the fundamental miscarriage of justice exception, it is a rare and narrow exception that allows federal courts to consider the merits of certain procedurally defaulted habeas petitions asserting constitutional violations, including those otherwise barred by AEDPA's one-year statute of limitations. *Gage v. Chappell*, 793 F.3d 1159, 1167 (2015). Under this exception, a federal habeas petitioner may avoid the ramifications of failing to timely file if he can show "actual innocence" under *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To pass through the *Schlup* gateway, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011).

Under the current state of the law in the Ninth Circuit, the new evidence need not be "newly discovered," as the Ninth Circuit has held it need only be "newly presented evidence." *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003); *but see also Pratt v. Filson*, 2017 WL 3327889, at *1 (9th Cir. Aug. 4, 2017) (questioning whether *Griffin* will have to be reconsidered in light of *United States v. Davis*, 825 F.3d 1014, 1020-21 (9th Cir. 2016) (en banc)). However, to make a "credible claim of actual innocence, petitioner must produce 'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Neal v. Satf*, No. 16cv2778, 2018 WL 836382, at *5 (E.D. Cal. Feb. 13, 2018) (quoting *Schulp*, 513 U.S. at 324). The *Schulp* gateway is "'demanding' and precedents holding that a habeas petitioner satisfies its strictures have typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1095-96 (9th Cir. 2013) (quoting *McQuiggin*, 569 U.S. at 401). Thus, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schulp*, 513 U.S. at 329.

# IV. ANALYSIS

## A. Equitable Tolling

This Court previously held that, before deciding the issue of equitable tolling, further factual development of the record was required concerning the status of the Petitioner's mental impairment for the March 2016 through August 2016 time period. (ECF No. 17.) Since then, and relevant to this time period, Petitioner filed some of his medical records, Exhibit "P," and Respondent filed a lodgment containing a more complete set of Petitioner's mental health records.[4] (ECF Nos. 27, 33.) Having reviewed these records pertaining to Petitioner's alleged mental incompetence, the Court concludes the record is now sufficiently developed for the Court to decide the issue of equitable tolling. *See Roberts v. Marshall*, 627 F.3d 768, 772-73 (9th Cir. 2010) (concluding the record was amply developed because the court had access to extensive medical records which reflected the petitioner's mental condition, including the specific dates on which petitioner was examined, and on which he was prescribed certain medications).

Petitioner suffers from the major mental disorder of bipolar disorder, manic phase. (*See* ECF No. 31-1 at 107.) The Court previously expressed concern about specific evidence in the record suggesting that "significant problems" may arise with respect to Petitioner's mental condition when he is not compliant with medication. (*See* ECF No. 17 at 13.) The record has since been supplemented with extensive medical evidence from the relevant time period. (*See* ECF Nos. 25, 27.) Respondent moves to dismiss the Petition, arguing that equitable tolling is not warranted here because the record demonstrates Petitioner is competent and that his failure to timely file his petition likely resulted from an incomplete understanding of the statute of limitations. (ECF No. 32-1.) The Court agrees.

---

[4] Exhibit "P" consists of Petitioner's medication reconciliations of active and inactive medications and his medication list. (ECF No. 27.) The lodgment filed by Respondent contains Petitioner's mental health records from January 2014 to November 2017 and the diagnoses of Petitioner's bipolar disorder; medication reconciliation records; statewide psychotropic medication forms; medication administration records; mental health placement and treatment plans; health care services request forms; interdisciplinary progress notes; and therapeutic/intervention notes. (ECF No. 33.)

There is substantial evidence in the record to demonstrate Petitioner possessed sufficient competence and capability to file his federal habeas petition by his deadline of August 29, 2016. Based on the record evidence, Petitioner is unable to meet the stringent equitable tolling test.

Respondent argues that during the relevant time period, the record shows Petitioner had the ability to prepare a habeas petition and timely effectuate its filing. (*See* ECF No. 32.) In response, Petitioner argues equitable tolling is appropriate under *Bills* because his mental state during the August 29, 2016,[5] through February 20, 2017 time period allegedly "*rendered him unable to 'personally'* prepare habeas petition and effectuate its filing." (ECF No. 34 at 3 (emphasis added).) In support, Petitioner points to the purported fact that he "relied on a bum" inmate to prepare his federal habeas petition. (ECF No. 34 at 3-5.) However, the Court is not persuaded that this qualifies Petitioner for equitable tolling under *Bills*.

First, as a general matter, reliance on inmate helpers is a common occurrence in habeas cases, and does not, in and of itself, constitute extraordinary circumstances supporting equitable tolling. *See Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (concluding that petitioner's reliance on helpers to attend to his petitions are hardly extraordinary circumstances given the vicissitudes of prison life). Even reliance on the *deficient* assistance of a jailhouse lawyer does not constitute an extraordinary circumstance. *See Salgado v. Madden*, No. 16cv1699, 2017 LEXIS 196316, at *19 (C.D. Cal. Oct. 5, 2017) (any possible negligence by petitioner's jailhouse lawyer does not 'constitute an extraordinary circumstance justifying equitable tolling); *see also Lindsey v. Darey*, No. 17cv956, 2017 WL 5198155, at *10 (C.D. Cal. Sept. 22, 2017) ("it is hardly extraordinary for another inmate – who is not a trained lawyer – to give erroneous legal advice or to make a legal misstep . . . as this is an all too common occurrence in prison life"); *Cf. Tacho v.*

---

[5] As the Court previously held, "[t]o be timely, Petitioner should have filed in federal court by August 29, 2016." (ECF No.17 at 11; ECF No.19 (order adopting the Court's Report and Recommendation).)

6

17-cv-00379-AJB-JLB

*Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (concluding petitioner's arguments concerning his mental condition and his reliance on incompetent jailhouse lawyers do not constitute cause to excuse a procedural default).

Petitioner's primary point here, however, seems to be that his reliance on a "bum" jailhouse lawyer is evidence that he suffered from a mental impairment so debilitating that it rendered him unable to personally prepare a habeas petition and effectuate its filing or unable rationally or factually to personally understand the need to timely file a federal habeas action under the *Bills* test. (ECF 34 at 3-4.) Further, Petitioner argues that his legal position is so meritorious that the fact that relief was denied to him in the state court demonstrates that Petitioner and his jailhouse lawyer were both incompetent. (ECF 31-1 at 16.) Petitioner misapprehends the *Bills* standard for extraordinary circumstances based upon mental impairment. It is not enough for Petitioner to argue, or even establish, that he was not able to articulate himself persuasively. He must demonstrate that he was actually unable to *even understand* that there was a need to make a timely filing or that he was so debilitated as to be *literally unable* to prepare and file a petition. Petitioner has fallen far short of meeting this high standard.

Here, to save the Petition from being time barred under AEDPA, Petitioner needs to demonstrate that he is entitled to equitable tolling for fully 175 days between the end of his statutory tolling and his February 20, 2017 filing date. The records presented do not support a finding that during the relevant period and for the required length of time, Petitioner suffered from a mental impairment so debilitating that it "rendered him unable to personally prepare a habeas petition and effectuate its filing," or "unable rationally or factually to personally understand the need to timely file [a federal habeas action]." *Bills*, 628 F.3d at 1100. Rather, they indicate that despite his mental disorder, Petitioner was able to both understand the need to timely file and prepare a habeas petition and effectuate its filing.

Focusing on Petitioner's mental condition during the relevant time period, the records show that Petitioner's delay in seeking federal habeas relief was ***not*** caused by any

extraordinary circumstances. For example, an interdisciplinary progress note made on April 1, 2016, indicates that Petitioner reported doing "better" and that his mood was a "ten," with ten being the best mood. (ECF No. 33-1 at 203.) Evidencing his competence and capability to timely prepare and file his habeas petition, as of April 2016, Petitioner reported he was "working on his college classes and as an assistant caregiver." (*See id.*) He also "continu[ed] writing with his children's mother and reading in his free time." (*Id.*) Petitioner reported his level of consciousness as "fully alert"; his cognition as "good attention and comprehension"; and his thought process and content as "clear and coherent and relative/reality-based." (*Id.*) Petitioner also reported the absence of psychotic symptoms and that he was in compliance with his medication for his diagnosed bipolar disorder and mood swings. (*Id.*) Petitioner reported doing well during the April and May 2016 time frame even though he was not consistently taking his medications. (*Id.*)[6]

In June 2016, a mental health treatment plan reported that, again, Petitioner was doing "better." (ECF No. 33-1 at 128.) Petitioner presented a "clear/coherent thought process" with "no symptoms of psychosis noted." (*Id.*) Petitioner also continued "working on his college classes and working as an assistant caregiver and attending Bible College." (*Id.*) Petitioner also reported that he was "writing with his children's mother and his sister/friends, and reading in his free time." (*Id.*)

This state of emotional and mental competence continued even after Petitioner's August 2016 deadline to file his federal habeas petition. In October 2016, he was described as having the "capacity to make an informed medical decision." (ECF No. 33-1 at 212.) Additionally in December 2016, Petitioner stated he was still "taking college classes . . .

---

[6] In April and May 2016, medication administration records indicate that Petitioner stopped taking his prescribed medication, was a no show with no attendance barriers, and did not want his medication and refused to take it. (ECF No. 33-1 at 58-61.) Throughout multiple medication management referral documents, Petitioner is also marked as having "missed 50% of medication, either by refusal, no-show, or shows a pattern of unexplained missed medications." (ECF No. 33-1 at 80-87.)

8

just completed Sociology and taking Psychology, Spanish, and Marine Science." (*Id.* at 216.)

In sum, the mental health records from the relevant time period do not establish that Petitioner's mental disorder—either while on or off medication—prevented him from personally preparing and understanding the need to timely file a federal petition. Petitioner's claim of mental incompetence under *Bills* is refuted by evidence that, during the relevant time period, he was taking college classes, writing and reading in his spare time, and reporting no symptoms of psychosis. Where, as here, there is substantial evidence in the record to demonstrate a petitioner possessed sufficient competence and capability to file during the limitations period, equitable tolling does not apply. *See Orthel v. Yates*, 795 F.3d at 939 (concluding evidence petitioner engaged in college-level classes and had "fairly good" insight and judgment refuted petitioner's claims of incompetency); *see also Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (physical and mental disabilities did not provide for equitable tolling because they did not prevent the prisoner from meeting other filing deadlines). Therefore, Petitioner has failed to show equitable tolling is warranted to save his otherwise untimely Petition.

**B.     Miscarriage of Justice Exception**

As set forth above, a federal habeas petitioner may avoid the consequence of failing to file within AEDPA's one-year statute of limitations if the petitioner can satisfy the "actual innocence" exception to untimeliness under *Schlup*. *Schlup*, 513 U.S. at 327. Petitioner refers to this as the miscarriage of justice exception in his filings and argues that it applies based on his claim of ineffective assistance of trial counsel. (*See* ECF No. 31-1 at 28.) Petitioner contends that had his defense been adequately presented at trial, he would have been acquitted. (ECF No. 31-1 at 17.) Respondent argues that Petitioner's request to

///
///
///
///

9

circumvent the untimeliness of his federal petition based on "factual innocence" should be "summarily rejected." (ECF No. 32-1 at 9-10.)[7]

Petitioner committed the crimes at issue in June and August of 2012. He was charged and convicted of robbery, assault by means of force likely to produce great bodily injury, battery, battery on a peace officer with injury, and/or resisting an executive officer. (*See* ECF No. 8-2 at 1, 9; ECF No. 8-12; ECF No. 31-3 at 111-12.) At trial, Petitioner testified that he suffered from bipolar disorder and, when he attacked Woods, he had not taken his medication and was feeling depressed. Petitioner admitted in his testimony that he stole Woods's sunglasses and punched him in the face. Several other witnesses at trial testified to Hinds's abnormal behavior, including agitation, hyperactivity, and aggressiveness on the day he attacked Woods. (ECF No. 8-12 at 1-2; ECF No. 8-11 (state petition).)

Under the miscarriage of justice exception to AEDPA's one-year statute of limitations, a federal habeas petitioner may avoid the ramifications of failing to timely file if he can show "actual innocence" under *Schlup* and "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. The new evidence must be so significant that when all of the evidence is viewed together, it becomes more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 386; *Pratt*, 705 Fed. App'x at 525; *Stewart v. Cate*, 757 F.3d 929, 938 (9th Cir. 2014). In addition, the Ninth Circuit has held that "where post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise

---

[7] Inexplicably and unhelpfully, Respondent fails to develop any argument addressing the miscarriage of justice exception, instead asserting, without citation to fact or law, that Petitioner's factual innocence claim should be "summarily rejected" because "insanity is not an affirmative defense to any of the crimes which Hinds was charged." (*Id*.)

barred claims." *Sistrunk v. Armenakis*, 292 F.3d 669, 673 (9th Cir. 2002) (en banc) (citing *Carriger v. Stewart*, 132 F.3d 463, 478-79 (9th Cir. 1997) (en banc)).

Petitioner argues the miscarriage of justice exception applies because his trial counsel "failed or forgot to present the expert psychiatrist." (ECF No. 31-1 at 30.) Petitioner argues "[i]f the psychiatrist had been called and testified similar to his report, at a bifurcate[d] §1026-second phase trial, counsel's lame insanity defense would have cause[d] the judge to instruct the jury regarding that defense, nevertheless, counsel never called any expert nor even consulted with an expert to determine whether such testimony would be helpful to Hinds' defense." (ECF No. 31-1 at 37.) Petitioner also alleges in the Petition that his counsel was ineffective for "failing to present 'ALL' of the overwhelming evidence" of insanity, which he contends would have been admissible at a bifurcated §1026 second phase trial. (ECF No. 31 at 6; ECF No. 31-1 at 34-36 ("the total quantum of insanity evid[ence] 'was not' presented at a trial on the issue due to counsel's errors").)[8]

The Ninth Circuit has found that habeas petitioners can qualify for the *Schlup* gateway with new or newly presented evidence supporting an affirmative defense that renders the conduct "noncriminal" because such evidence "corresponds with *Schlup*'s actual innocence requirement." *Jaramillo v. Stewart*, 340 F.3d 877 (9th Cir. 2003) (analyzing actual innocence claim that was based on affirmative defense of justification to first-degree murder under Arizona law); *Smith v. Baldwin*, 510 F.3d 1127, 1140 (9th Cir. 2007) (analyzing actual innocence claim that was based on affirmative defense to felony murder under Oregon law); *Griffin v. Johnson*, 350 F.3d 956, 963-64 (9th Cir. 2003) (analyzing actual innocence claim that was based on Oregon's insanity defense).

///

---

[8] The procedure for having a second phase trial concerning insanity is laid out in the California Penal Code § 1026. *See* Cal. Penal Code § 1026 ("If a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only the other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed").

Petitioner's evidence does not present this Court with rare and extraordinary circumstances warranting the application of the miscarriage of justice exception to AEDPA's one-year statute of limitations. As best as this Court can discern, the new or newly presented evidence at issue is a 3-page excerpt from a 5-page mental competency evaluation report dated August 22, 2012. [9] (*See* ECF No. 31-2 at 75-77 (providing pages 2-4 of 5-page report).) Petitioner highlights that this excerpt confirms Petitioner suffers from bipolar mood disorder[10] and contains the following finding: "It is probable that he may have been off his psychiatric medications and recovering from the intoxicating effects of methamphetamine at the time of the instant offense." (ECF No. 31-1 at 30 (quoting ECF No. 31-2 at 77).) Petitioner contends this excerpt of the mental competency evaluation report is "uncontroverted" and shows that Petitioner was mentally incompetent at the time of his crimes against Mr. Woods. (ECF No. 31-1 at 31-32.) The Court disagrees.

To establish the defense of not guilty by reason of insanity under California law, a defendant must prove "by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." Cal. Penal Code § 25(b).[11] Despite the California legislature's use of the conjunctive "and" in the California Penal Code, the Supreme Court of California interprets the California Penal Code as "recognizing two distinct and independent bases on which a verdict of not guilty by reason of insanity might be returned." *People v. Lawley*, 27 Cal. 4th 102, 169-70 (2002). The excerpt of the mental competency evaluation submitted by Petitioner does not evidence that Petitioner

---

[9] The full report is not part of the record in this federal habeas proceeding. The Court notes that it appears that the report was received into evidence as part of a pretrial mental competency hearing held on September 7, 2012. (ECF Nos. 8-9 at 47, 8-11 at 55, 8-13 at 121.)

[10] In actuality, the reference in the report to bipolar mood disorder states, "Bipolar mood disorder, type 1, by history," indicating that this was not a diagnosis made by the examining physician. (ECF 31-2 at 77.)

[11] *Compare People v. Mills*, 55 Cal. 4th 663, 671-72 (2012) ("At a trial on the issue of guilt, '[e]vidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.").

was incapable of knowing or understanding his actions at the time of the offense or that he was unable to distinguish between right and wrong. In fact, the evaluation includes Petitioner's explanation of the offense, which strongly indicates he was fully cognizant of the nature of his act and even evidences the requisite *mens rea* for the June 2012 crimes at issue:

> "I broke some dude's glasses...I just went up to him and asked him politely if I could borrow a light...and then he called me a nigger...I've been in prison before and you just don't use that word around people like that...but this old dude just used it right around me. . . . Then I pushed him and broke his glasses…I was hoping that he would fight me back and hit me so that I could really wail on him...then he and I struggled over my backpack and that's when the police came."

(ECF No. 31-2 at 75.)[12]

Further, the jury heard evidence of Petitioner's history of bipolar mood disorder, that Petitioner off his psychiatric medications, and that he was coming off of methamphetamine at the time of the June 2012 offense—albeit not from an expert witness. (ECF No. 8-12 at 1-2; ECF No. 8-11 (state petition).) The Court is not persuaded that Petitioner would have received a better outcome at trial had the jury been presented with the August 22, 2012 mental competency evaluation report and/or testimony from the psychiatrist who authored the report. This additional evidence does not cast doubt on the convictions at issue.

Thus, having reviewed the newly presented evidence specifically argued by Petition together with all of the evidence before this Court concerning Petitioner's mental state, this

---

[12] As indicated, the purpose of the evaluation was to determine competency. The charged offenses occurred in June and August of 2012, and Plaintiff directs his habeas arguments to the issue of whether he was insane at the time of the June 2012 offenses. The evaluation was conducted in August 2012. At that time, the evaluator concluded Petitioner was "alert and oriented to time, place, person, and situation," his "thought process was logical and goal-directed," and his "[i]nsight and judgment were fair. Cognition was intact." (ECF No. 31-2 at 77.) Petitioner was also found to have a "normal mental state" at the time of the examination. (*Id.*)

Court concludes that Petitioner fails to meet his burden to show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crimes charged in light of his additional evidence. Therefore, Petitioner does not qualify for the miscarriage of justice exception to AEDPA's limitations period.

**C.  Evidentiary Hearing**

In his Petition, Petitioner includes a request for a "full and fair evidentiary hearing." (ECF No. 31-1 at 47.) Petitioner also requests "this Court . . . turn to evaluate whether Petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing." (ECF No. 34 at 3.) In support, Petitioner states that he "only needs to allege a colorable claim for relief, which is a low bar, and [Petitioner] has surmounted it and nothing Respondent can say warrants a different result." (*Id.*)

Here, Petitioner requests an evidentiary hearing to factually develop his claims. (ECF No. 31-1 at 47.) However, the record before the Court has already been amply developed and contains fulsome evidence related to Petitioner's mental competence. Because Petitioner's claim of mental impairment can be resolved on the existing record the district court should deny Petitioner's request for an evidentiary hearing. *See Roberts*, 627 F.3d at 773 ("where the record is amply developed, and where it indicated that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence"); *see also Davis v. Malfi*, 722 Fed. App'x 663, 665 (9th Cir. 2018) (concluding the district court was "well within its discretion to deny an [evidentiary] hearing because the record was already 'amply developed' with more than 700 pages of records from the relevant period) (quoting *Roberts* 627 F.3d at 773). As stated above, the medical records before the Court are sufficient to establish that Petitioner's mental impairment was not so severe as to prevent a timely filed federal petition. Accordingly,

the Court concludes that an evidentiary hearing is not warranted and Petitioner's request for an evidentiary hearing is denied.

Therefore, for the reasons stated above, the Court RECOMMENDS that the motion to dismiss the Petition as time barred be GRANTED and the Petition be DENIED.

## V. CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Respondent's Motion to Dismiss (ECF No. 32); and (3) denying the Petition.

**IT IS HEREBY ORDERED** that not later than **October 15, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 22, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, F.2d 1153, 1156 (9th Cir. 1991).

Dated: September 24, 2018

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge